**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JASON KROMER, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, | : | |
| Commissioner of Social Security[1] | : | NO. 20-6489 |

## <u>OPINION</u>

SCOTT W. REID                                    DATE: January 13, 2022
UNITED STATES MAGISTRATE JUDGE

  Jason Kromer ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) to obtain

review of the Commissioner of Social Security's ("Commissioner") decision denying his

application for Supplemental Security Income Benefits ("SSI") and Disability Insurance Benefits

("DIB"). For the reasons that follow, I deny Plaintiff's Request for Review and affirm the

Commissioner's final decision because it is supported by substantial evidence.

## I.  <u>FACTUAL AND PROCEDURAL HISTORY</u>

  Plaintiff was born on March 3, 1977 and alleges that he became disabled at the age of

thirty-eight due to his mental condition. Tr. at 56. Prior to his alleged disability, Plaintiff worked

as a forklift operator and terminal operator for approximately sixteen years. Tr. at 247-48. He

also obtained a bachelor's degree in accounting, online, from Clarion University in 2016. Tr. at

40. In November 2018, Plaintiff filed applications for SSI and DIB. Both applications alleged

disability due to bipolar I and social phobia beginning January 4, 2016. Tr. at 57.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021, and
should be substituted for the former Commissioner, Andrew Saul, as the defendant in this action.
Fed. R. Civ. P. 25(d).

Plaintiff's SSI and DIB claims were initially denied on April 11, 2019. Tr. 124. He then requested a hearing before an Administrative Law Judge ("ALJ"). Tr. at 135-36. The ALJ held a video hearing on January 24, 2020, where the ALJ heard testimony from Plaintiff, his mother, and an impartial vocational expert. Tr. at 29-55. After the hearing, the ALJ issued a written decision denying Plaintiff benefits. Tr. at 10-27. On November 20, 2020, the Appeals Council denied Plaintiff's request for review, permitting the ALJ's decision to stand as the final decision of the Commissioner. Tr. at 1-6. Plaintiff soon after filed this action. (doc. 1).

## II.   **LEGAL STANDARDS**

This Court's role on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g); *see Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and must be "more than a mere scintilla." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d. Cir 2014) (quoting *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, the issue in this case is whether there is substantial evidence to support the ALJ's conclusion that Plaintiff is not disabled.

To prove he is disabled, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." 42 U.S.C. §423(d)(1). As explained in the following agency regulation, each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in §404.1590, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we

2

also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

20 C.F.R. §404.1520(4) (references to other regulations omitted).

Before going from the third to the fourth step, the Commissioner will assess a claimant's residual functional capacity ("RFC") based on all the relevant medical and other evidence in the case record. *Id*. The RFC assessment reflects the most an individual can still do, despite any limitations. SSR 96-8p.

The final two steps of the sequential evaluation then follow:

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make the adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

*Id*.

## III.   <u>THE ALJ'S DECISION</u>

In his decision, the ALJ determined that Plaintiff suffered from the severe impairments of bipolar disorder and social phobia. Tr. at 15. According to the ALJ, however, none of Plaintiff's impairments, and no combination of impairments, met or medically equaled a listed impairment. *Id.* at 16. The ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels but was limited to performing simple, routine tasks. *Id.* at 17. The ALJ also determined that Plaintiff could have occasional contact with supervisors and coworkers, but no contact with the general public, and needed to be limited to work environments where change was minimal. *Id.* Relying upon the testimony of the vocational expert who appeared at the

hearing, the ALJ determined that Plaintiff could return to his past work as a maintenance technician. *Id.* at 21. Plaintiff, therefore, was not disabled according to the ALJ. *Id.*

IV.   **DISCUSSION**

Plaintiff argues that the ALJ's decision is incorrect and unsupported by substantial evidence because the ALJ failed to properly evaluate the opinion of Plaintiff's treating physician, Dr. Scott Berman. (doc. 14 at 1). I disagree.

When evaluating medical opinions, an ALJ is not required to give any "specific evidentiary weight, including controlling weight" to any one opinion. 20 C.F.R. § 404.1520c(a). Instead, an ALJ must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." *Id.* § 404.1520c(a)-(c). [2] An ALJ must "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." *Id.* § 404.1520c(a). The two most important factors for determining the persuasiveness of medical opinions are supportability and consistency. *Heisey v. Saul*, No. 20-324, 2020 WL 6870738, at *9 (E.D. Pa. Nov. 23, 2020). "The more relevant the medical evidence and supporting explanations provided by a medical source are to support his or her medical opinion ..., the more persuasive the medical opinion...." 20 C.F.R. § 404.1520c(c)(1). In addition, "[t]he more consistent a medical opinion ... is with the evidence from other medical

---

[2] The Commissioner made "sweeping changes" to the rules regarding the evaluation of medical opinion evidence that became effective on March 27, 2017. *Lepperd v. Berryhill*, No. 16-02501, 2018 WL 1571954, at *6 n.10 (M.D. Pa. Feb. 20, 2018) (*citing* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017)), report and recommendation adopted, No. 16-2501, 2018 WL 1566662 (M.D. Pa. Mar. 30, 2018). Those changes abandoned the treating-physician rule. *See* 20 C.F.R. § 404.1520c. Because Plaintiff filed his application SSI benefits after March 27, 2017, all medical opinions will be evaluated in accordance with the changed rules.

sources and nonmedical sources ..., the more persuasive the medical opinion ... will be." *Id.* § 404.1520c(c)(2).

Here, Dr. Berman treated Plaintiff for bipolar disorder since 2016. Tr. at 635. On November 26, 2019, he authored a letter and medical source statement regarding Plaintiff's mental impairments. *Id.* In the letter, Dr. Berman remarked that Plaintiff was minimally functional, responded modestly to treatment, and could sometimes have periods of increased function but those periods were followed by anxiousness and distress which caused Plaintiff unable to maintain employment. *Id.* In the medical source statement, Dr. Berman indicated that Plaintiff had marked limitations in maintaining social function and concentration, and moderate limitations in his activities of daily living. *Id.* at 638. He further opined that Plaintiff's mental status would cause him to miss more than four days of work per month. *Id.* at 639.

The ALJ evaluated Dr. Berman's opinion and determined it was not persuasive. Tr. at 20. The ALJ explained that Dr. Berman's view was "inconsistent with the totality of the evidence and not supported by the treatment notes showing primarily normal mental status examinations, except for during the [Plaintiff's] admission." *Id.* Specifically, in support of his conclusion that the evidence did not reflect Dr. Berman's assessment, the ALJ cited Plaintiff's physician notes which describe "routine examinations and no severe psychological limitations." *Id.* at 21. The ALJ also noted that Plaintiff received the same dosage of medication and that such medication was "effective in alleviating his symptoms." *Id.*

In response, Plaintiff contends that the ALJ "relied on mischaracterizations of the record to justify his analysis of the opinion." (doc. 14 at 5). The record, however, is replete with support for the ALJ's conclusion that Dr. Berman's findings were inconsistent with the totality of the evidence.

The ALJ's determination that Dr. Berman's opinion was not persuasive is supported by contradictions between Dr. Berman's treatment notes and letter. Though Dr. Berman consistently indicated that Plaintiff responded well to treatment, *see e.g.* Tr. at 410, 412, 421, 425, 429, 458, 462, 466, he wrote in his letter that Plaintiff "had only a modest response to treatment." Tr. at 635. Likewise, Dr. Berman frequently noted that Plaintiff had no impairment for school and/or work, *see e.g.* Tr. at 410, 412, 415, 419, 423, 427, 431, but then opined that Plaintiff was "minimally functional." Tr. 635. Moreover, Dr. Berman regularly found that Plaintiff's mental examination were normal. Tr. at 410, 412-15, 417-19, 421-23, 425-27, 429-31. Plaintiff also consistently had appropriate appearance, full orientation, normal speech, normal motor behavior, a clear and coherent thought process, normal thought content, and good insight and judgment, according to Dr. Berman. Tr. at 410, 412-15, 417-19, 421-23, 425-27, 429-31. Even where Dr. Berman found some abnormalities, he indicated that Plaintiff was doing well in other areas. *See e.g.* Tr. at 434 (finding Plaintiff having flat affect and difficulty sleeping but only mild impairment for school/work); Tr. at 438 (finding Plaintiff appearing anxious but also well-oriented and well-developed and nourished); Tr. at 450-51, 58-59, 66-67 (finding Plaintiff was overall stable even though he experienced frequent difficulty falling asleep and sometimes appeared nervous). Such contradictions in Dr. Berman's treatment notes and opinion provide substantial evidence to support the ALJ's finding that Dr. Berman's evaluation was not persuasive.

The inconsistency of Dr. Berman's opinion with the rest of the medical opinions also supports the ALJ's determination that it was not persuasive. The ALJ frequently cited to the medical evaluations conducted by Dr. Gregory Coleman as a basis for his determination that plaintiff is not disabled. Although Dr. Coleman found that Plaintiff had moderate limitations in

his ability to interact appropriately with others, he indicated that Plaintiff had no other limitations in his ability to do work related activities. Tr. at 569-70. Dr. Coleman gave Plaintiff a "[g]ood" prognosis "given compliance with continued mental health treatment and finding suitable full time employment…". Tr. at 569.

In addition to Dr. Coleman's opinion, the ALJ also cited to the opinions of the State agency psychological experts John D. Chiampi, Ph.D., and Karen Plowman, Psy.D. In 2017, Dr. Chiampi reviewed Plaintiff's record, including treating source documents from Dr. Berman, and determined that Plaintiff was not disabled and "retain[ed] capacity to complete a range of tasks with adequate social interaction." Tr. at 71, 75. Dr. Plowman conducted a comparable review of Plaintiff's record in 2019 and similarly concluded that although Plaintiff had some limitations in terms of social interaction, he was ultimately not disabled and could perform various jobs in the national economy. Tr. at 94.

Plaintiff also argues that the ALJ mischaracterized the record pertaining to his response to medication and treatment. As the ALJ pointed out, however, Plaintiff was regularly prescribed the same medication and dosage. Importantly, Plaintiff's medications and treatment were deemed effective in alleviating his symptoms. *See* Tr. at 410, 412, 421, 425, 429, 458, 462, 466. While Plaintiff's medications were adjusted at times over his years of treatment, it was usually done to minimize side effects rather than address ineffectiveness. *See e.g.* Tr. at 452-53 (changing medications to reduce metabolic/sedation problems); Tr. at 462-65 (increasing Plaintiff's lithium dosage but noting his response to treatment/medication was "good"). Given such regularity and effectiveness, the evidence is sufficient to support the ALJ's conclusion that Dr. Berman's opinion was inconsistent with the rest of the record.

Lastly, the ALJ's conclusion that Plaintiff was "primarily stable" is supported by substantial evidence. As discussed, Plaintiff's medical providers regularly noted that Plaintiff responded well to treatment and had few limitations. *See supra* at p.6-7. His medical providers also indicated that his mood, judgment, insight, and thought, were normal or even good – relevant factors considering Plaintiff's bipolar and manic diagnosis. *See id.* There were no drastic changes to any of Plaintiff's diagnosis or treatment, except for his admission in 2018. *Id.* at 7. Furthermore, some of Plaintiff's most recent medical evaluations state that his status was not only "stable" but "improving." Tr. 614. According to Plaintiff, however, "notations that a claimant is stable on medications is not a basis for rejecting a treating physician's opinion." (doc. 14 at 8) (citing *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000)). In *Morales*, the Third Circuit explained that for people who suffer "from an affective or personality disorder marked by anxiety, the work environment is completely different from home or a mental health clinic." 225 F.3d at 319. Thus, for someone like Plaintiff, "[t]he relevant inquiry with regard to a disability determination is whether the claimant's condition prevents him from engaging in substantial gainful activity." *Id.* Here, unlike in *Morales*, Plaintiff's medical providers consistently opined that Plaintiff was able to work albeit with some limitations. *See e.g.* Tr. at 410, 412, 415, 419, 423, 427, 43, 71, 75, 94, 569-70. Therefore, the ALJ's finding that Dr. Berman's opinion was inconsistent with the totality of the evidence is supported by the law in this circuit.

## IV.   CONCLUSION

The ALJ's decision is supported by substantial evidence. The ALJ properly explained his reasons for finding certain medical opinions unpersuasive and properly considered the remainder of the medical evidence. In accordance with the discussion above, I conclude that Plaintiff's Request for Review should be **DENIED**, and judgment entered in favor of the Commissioner.

BY THE COURT:


*/s/ Scott W. Reid*

_____

SCOTT W. REID, J.
UNITED STATES MAGISTRATE JUDGE